UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA and the COMMONWEALTH OF KENTUCKY, *ex rel.* BARB ELFERS,<br><br>    Plaintiff,<br><br>v.<br><br>ZEGARY ALLEN, MD, *et al.*,<br><br>    Defendants. | Case No. 2:22-cv-00083-GFVT-EBA<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

    This matter is before the Court on Defendants' Motion for Judgment on the Pleadings [R. 27.] Plaintiff seeks to recover damages on behalf of the United States and the Commonwealth of Kentucky under the federal False Claims Act, 31 U.S.C. §§3729, *et seq.* and the Kentucky Medicare Fraud Statute, KRS §205.8463. [R. 1.] The Defendants seek judgment on the pleadings as to both counts, arguing that Elfers cannot pursue her claims after signing a severance agreement, that she failed to plead her claims with specificity, and that KRS §205.8463 does not provide a private right of action. Having reviewed the pleadings, the Court will **GRANT** Defendants' Motion for Judgment on the Pleadings.

**I**

    Barb Elfers, a former employee of Defendant Summit Medical Group, Inc. d/b/a SEP Physicians ("SEP"), brought this *qui tam* action alleging that the Defendants defrauded the United States and the Commonwealth of Kentucky by performing unnecessary eye surgeries on patients and consequently submitting false or fraudulent claims to Medicaid. [R. 1.] Elfers contends that Dr. Allen overdiagnoses patients with glaucoma and pressures them into unnecessary laser eye surgery. *Id.* at 9-12. As evidence she points to statistical aberrations in

Dr. Allen's quantity of patients in proportion to the number of surgeries he performs, as well as remarks from patients suggesting he was "focused on getting [them] to agree to surgery." *Id*. The Defendants have now moved for judgment on the pleadings. [R. 27.]

In their motion, the defendants present four arguments: the FCA's *qui tam* procedure is unconstitutional, Elfers' FCA and state law claims fail as a result of a Severance Agreement she signed after commencing this action, Elfers' FCA claim fails because she did not state it with particularity, and Elfers' state law claim fails because KRS § 205.8463 does not provide a private right of action. [R. 27-1.] The Court has stayed consideration of the constitutional arguments pending resolution of the other issues. [R. 33.] The Defendants have, along with their motion, presented the Court with a copy of the severance agreement signed by Elfers. [R. 26-1.]

In her response Elfers focuses almost exclusively on the Defendants' constitutional claim. [R. 29 at 4-13.] She very briefly addresses the defendants' particularity arguments, stating that "[t]he pleadings speak for themselves," but does not otherwise engage with the Defendants' contention that Elfers' severance agreement requires dismissal. *Id*. at 13. As to the Defendants' claim that KRS § 205.8463 does not provide a private right of action, Elfers states that "[i]t is not necessary for Kentucky to give Relator the right to sue" because "Relator's claims are filed under federal law and no Kentucky law is required." *Id*. at 14.

In their reply, the Defendants point out a host of issues with Elfers' response. Throughout their pleadings they have repeatedly suggested that this lawsuit is part of a pattern of improper litigation by Elfers' counsel. [R. 27-1 at 1-2; R. 30 at 1-2.] In their reply they note that "Elfers' lawyer filed the same Response in another *qui tam* case in which St. Elizabeth and SEP raised the constitutional challenge" and that, as they noted in that case, "large portions of the

2

constitutional arguments in the Response were literally copied-and-pasted (verbatim) from a brief filed in *United States ex rel. Zafirov v. Florida Medical Associates, LLC*, 2024 WL 4349242 (M.D. Fla. Sept. 30, 2024)." [R. 30 at 1-2.]  They also suggest that this conduct is sanctionable.  *Id*.  At a glance the Court can readily tell that Elfers' response was haphazardly stitched together – with frequent changes in tone, font, and even font size – so that it appears to be the legal version of Frankenstein's monster.  And while transmogrification may be suited to mad science, it is not suited to the courtroom.  Nevertheless, the Court will not apply sanctions as, like Dr. Frankenstein, Elfers' counsel's creation will be their downfall.

## II

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted."  *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Zeigler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001)).  "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *JP Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citations omitted).  Additionally, courts can examine "public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss, as long as they are referred to in the [c]omplaint and are central to the claims contained therein" without transforming a motion for judgment on the pleadings into a motion for summary judgment.  *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

3

As is the case with a motion to dismiss under Rule 12(b)(6), in a Rule 12(c) motion for judgment on the pleadings, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). The Supreme Court explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### A

The Court first turns to the Defendants' argument that Elfers released all of her claims arising out of her employment at SEP, including the claims at issue here, when she signed her severance agreement. [R. 27-1 at 10-13.] The Sixth Circuit has held that "a relator may not seek voluntary dismissal of any *qui tam* action without the Attorney General's consent." *United States v. Health Possibilities, P.S.C.*, 207 F.3d 335, 339 (6th Cir. 2000) (citing 31 U.S.C. § 3730(b)(1)). Nevertheless, the Defendants cite *State Farm Mut. Auto. Ins. Co. v. Angelo*, 95 F.4th 419 (6th Cir.), *cert. denied,* 145 S. Ct. 264 (2024), for the idea that perhaps relators can release their claims in some circumstances. And in *State Farm* the Sixth Circuit appeared to reject "the argument that release agreements executed after the filing of an FCA case are per se unenforceable," stating "we have not adopted that rule, and have no cause to do so here." *Id*. at 430; *contra United States ex rel. Stipe v. Powell Cty. Fiscal Ct.*, No. 5:16-CV-446, 2018 WL

4

3078764, at *3 n.1 (E.D. Ky. June 21, 2018) ("It is undisputed that a post-filing release of *qui tam* claims is unenforceable.")

The Court thinks that the Defendants have overread *State Farm*. They analogize to scenarios where a relator signs a release and then later files a *qui tam* action. [R. 27-1 at 10-15.] Courts analyzing whether those after-filed claims are barred by the earlier release have weighed the public policy goals of the FCA, such as notifying the government of potential fraud, with the enforcement of the agreement and have generally determined that such agreements are permissible when the government was otherwise made aware of the fraud. *See United States v. Northrop Corp.*, 59 F.3d 953, 962–68 (9th Cir. 1995); *United States ex rel. Hall v. Teledyne Wah Chang Albany*, 104 F.3d 230, 233 (9th Cir. 1997); *United States ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1170 (10th Cir. 2009); *United States ex rel. McNulty v. Reddy Ice Holdings, Inc.*, 835 F. Supp. 2d 341, 360 (E.D. Mich. 2011). However, such pre-filing releases do not implicate the same concerns under § 3730(b)(1) as post-filing releases, which may entail the Government – the real injured party – being cut out of negotiations and given short shrift.

The *State Farm* decision may have appeared to contemplate such a post-filing release in its failure to adopt a broad rule barring them, but such language was also not necessary for the resolution of that case. Consider the facts of *State Farm* itself. In that case the defendant signed a settlement agreement in another matter, after which a *qui tam* complaint he had also filed was unsealed. *State Farm Mut. Auto. Ins. Co. v. Angelo*, 587 F. Supp. 3d 611, 613-14 (E.D. Mich. 2022). The Settlement Agreement contained two relevant provisions: a Dismissal Provision and a Release Provision. In the Dismissal Provision the defendant agreed to "take all steps necessary to settle, discontinue with prejudice, and to secure the discontinuance of, any lawsuits, arbitrations, appeals, claims, and other proceedings brought by [defendant] pending against State

5

Farm Mutual and/or any individual insured by State Farm Mutual." *Id*. at 613.  Pursuant to that provision, State Farm sought, and the district court ordered, the defendant to "take all necessary steps" to dismiss the *qui tam* action.  The district court interpreted that to mean the defendant "proceeding in good faith and undertaking no contrary or inconsistent acts, must forthwith solicit the government's consent to dismiss the instant *Qui Tam* Action against Plaintiff, along with its subsidiaries, affiliates, officers, directors, and employees, and must act on this obligation not later than Monday, March 14, 2022." *Id*. at 621.

However, in reaching this decision the district court did not flout the standard bar against unilateral dismissal.  Indeed, the district court noted that it is well established that "a party cannot *unilaterally* dismiss a *qui tam* action." *Id*. at 619.  And it made clear that "[i]f, upon request, the government decides it does not consent to dismissal, then that is the end of the matter." *Id*. at 620.  The relief ordered by the district court was therefore, far from the dismissal sought here, narrow and carefully tailored to the release signed by the defendant in *State Farm* and entailed no further conflict with § 3730(b)(1).  And it was this narrow relief that the Sixth Circuit ultimately affirmed.  *State Farm*, 95 F.4th at 431-32 ("enforcing the Settlement Agreement would be problematic only to the extent that private parties would be permitted to bargain away the government's ability to prosecute fraud upon the government. But the district court's order required Angelo only to seek the government's consent, not to unilaterally dismiss the case.")

Here Elfers' Severance Agreement contained only the following release provision (excerpted in relevant part):

> As a material inducement to enter into this Agreement, SEP on one hand and Employee on the other hand fully, completely, irrevocably and unconditionally hereby release each other and SEP's board members, officers, employees, agents, representatives, successors and assigns, from any and all claims of whatever

6

> nature, including expenses and attorney's fees, arising out of Employee's employment at SEP which have been or could have been asserted by either party or on either party's behalf in any forum as of the date of this Agreement…..
> Employee further hereby waives her right to receive any monetary relief from any action brought by her or on her behalf pursuant to the False Claims Act.

[R. 26-1 at 2.] It does not, unlike the defendant's agreement in *State Farm*, include any provision requiring Elfers to take any steps of any kind to dismiss this or any other action. In essence the court in *State Farm*, affirmed by the Sixth Circuit, was ordering specific performance of a particular contractual provision present in that case – *not* dismissal of the action as sought here. *State Farm*, as relied upon by the Defendants, is therefore inapposite to the agreement at issue here and dicta therein will not motivate this Court to stray from the general rule that "a post-filing release of *qui tam* claims is unenforceable." *Powell Cty. Fiscal Ct.*, 2018 WL 3078764, at *3 n.1.[1]

**B**

**1**

The Court next turns to whether Elfers has pled her FCA claim with sufficient particularity. The heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b) applies to complaints brought under the FCA. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003). The Sixth Circuit interprets Rule 9(b) as requiring plaintiffs to "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the

---

[1] The Defendants make a further argument based on the release provision, stating that "Count One also fails because Ms. Elfers waived any right to receive monetary relief under the FCA." [R. 27-1 at 13-15.] For that proposition they rely on *U.S. ex rel. Dillon v. St. Elizabeth Med. Ctr., Inc.*, 2017 WL 3000662 (E.D. Ky. July 13, 2017), which analyzed an agreement with a similar provision. Unfortunately for the Defendants, *Dillon* is another case involving a pre-filing release, placing it outside the bounds of the concerns implicated by § 3730(b)(1). Accordingly, this argument does not disturb the Court's above conclusion to apply the general rule against post-filing release of *qui tam* claims. In essence this argument and the Defendants' other release provision argument rise and fall together.

fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.,* 2 F.3d 157, 161–162 (6th Cir. 1993). More specifically, *Yuhasz* makes clear that the relator must do more than set out a methodology by which the alleged fraud occurred. *Yuhasz*, 341 F.3d at 563-64. Instead, they must cite at least one specific occurrence of a false claim being submitted to the government. *Id*. at 564 (citing *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.,* 290 F.3d 1301, 1312 (11th Cir. 2002) ("failure to allege with any specificity if—or when—any actual improper claims were submitted to the Government is indeed fatal")); *see also United States ex rel. Butler v. Magellan Health Serv., Inc.*, 101 F.Supp.2d 1365, 1369 (M.D.Fla.2000) ( "Plaintiff does plead a fraudulent scheme of conduct which may well be prohibited by law. However, Plaintiff pleads no specific occurrences of a false claim.... [T]he absence of specific allegations of fraudulent false claims is determinative.")

District courts assessing FCA claims have repeatedly applied this very standard. *United States ex rel. Doe v. Jan-Care Ambulance Serv.*, 187 F.Supp.3d 786, 793 (E.D. Ky. 2016) (relator "must identify at least 'a single false claim arising from an allegedly false invoice.'") (quoting *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 879 (6th Cir. 2006)). And the standard means that the relator "must provide 'concrete facts' about the claims, such as *when* any actual improper claims were submitted to the government." *Id*. at 793 (quoting *U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 446 (6th Cir. 2008)); *see also United States ex rel. Sharma v. Miraca Life Sciences, Inc.*, 472 F. Supp. 3d 429, 446 (N.D. Ohio 2020) (FCA claim dismissed because "Relator acknowledges that he cannot identify a single allegedly false claim submitted to the government for payment"). In *Jan-Care* the relator identified a purported scheme by which the defendants would defraud the government and that such a scheme meant "Jan-Care *must have* submitted false claims to the VA." *Jan-Care*, 187 F.Supp.3d at 793. Yet

8

that was still insufficient because the relator offered "no 'concrete facts' about when Jan-Care allegedly submitted these allegedly fraudulent claims to the government." *Id*. As the district court there noted, "Jan-Care could have submitted the allegedly fraudulent claims to the VA the day after the transport, the next month, or the next year." *Id*. More problematically, it noted that "perhaps Jan-Care never submitted claims for those three transports" at all. *Id*.

Like the relator in *Jan-Care*, Elfers sets out a general methodology by which fraud may have occurred but does nothing to allege even one instance of a false claim being submitted. First, Elfers describes the alleged scheme: Dr. Allen performs unnecessary laser eye surgeries for profit. How does she know about this alleged fraud? Because she extrapolates from Dr. Allen's volume of surgery in proportion to his quantity of patients to the conclusion that he must be "falsely over diagnosing his patients to falsely bill for unnecessary laser eye surgeries." [R. 1 at 10-12.] She further supports this inferential leap with a single survey from one of Dr. Allen's patients that stated Dr. Allen "seemed focused on getting [the patient] to agree to surgery." *Id*. at 12. When it comes to what fraudulent claims Dr. Allen purportedly submitted, Elfers simply makes further generalized allegations that "[b]y virtue of [their described scheme], commencing in 2019 and continuing through the present time, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the United States Government for payment and approval." [R. 1 at 12.] This is not sufficient under Rule 9(b). Even with Court accepting that her allegations of Dr. Allen's scheme are true at this stage, Elfers makes no attempt to identify even one concrete false claim Dr. Allen submitted. To paraphrase *Jan-Care*, perhaps Dr. Allen never even submitted claims for any unnecessary surgeries.

9

2

The Court also does not see itself as under an obligation to grant Elfers leave to amend or otherwise dismiss her complaint without prejudice.  While Federal Rule of Civil Procedure 15 provides that leave to amend should be freely granted where justice so requires, the Sixth Circuit in *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.* recently noted that "[w]here parties have fully argued the merits of a 12(b)(6) motion to dismiss and the district court has duly considered those arguments and issued an opinion resolving the motion, it is a stretch to say justice requires granting leave to cure the complaint's deficiencies as identified in adversarial pleadings and the district court's order—even where the initial order turned on a failure to meet Rule 9(b)'s particularity requirements." *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 918 fn. 2 (6th Cir. 2017); *see also U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 510-511 (6th Cir. 2008) (noting that "*Bledsoe II* should not be taken to imply that the district court must grant Relator leave to file an amended complaint") (Suhrheinrich, J., concurring).  The Sixth Circuit has held that a district court does not abuse its discretion where, as here, the plaintiff never sought leave to amend. *Islamic Ctr. of Nashville v. Tennessee*, 872 F.3d 377, 387 (6th Cir. 2017).  And, more relevant to this context, it has also affirmed a district court's failure to sua sponte grant leave to amend a complaint that, like here, was dismissed for failure to comply with Rule 9(b).  *CNH Am. LLC v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW)*, 645 F.3d 785, 795 (6th Cir. 2011).

Here Elfers has filed no motion to amend.  On the contrary, in her response brief she offered no response to the Defendants' arguments that she failed to plead her claims with specificity other than to state, "[t]he pleadings speak for themselves." [R. 29 at 13.]  As the Court has explained above, they do not.  The Sixth Circuit has previously explained that "a bare

10

request in an opposition to a motion to dismiss ... is not a motion to amend." *Louisiana Sch. Employees' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) (internal marks and citation omitted)). In this case there was not even such a bare request. As Elfers failed to identify what she might plead to save her claim, and failed to even offer further information supporting the specificity of her fraud allegations, the Court is not convinced that she would be able to plead with specificity even if it granted her leave to amend or dismissed this case without prejudice. *See also United States ex rel. Roycroft v. Geo Grp.*, Inc., 722 F. App'x 404 (6th Cir. 2018) (affirming dismissal with prejudice of FCA complaint for failure to plead with particularity).

### C

Finally, the Court considers Elfers' claim under KRS § 205.8463. In her response, Elfers stated that "[i]t is not necessary for Kentucky to give Relator the right to sue" and "Relator's claims are filed under federal law and no Kentucky law is required." [R. 29 at 14.] The Defendants contend that Elfers has therefore abandoned her KRS § 205.8463 claim, the second count of her complaint. [R. 30 at 8.] The Court agrees.[2]

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

1. Defendant's Motion for Judgment on the Pleadings [**R. 27**] is **GRANTED;**

---

[2] The Court notes that Elfers' counsel submitted an almost entirely identical (and similarly heavily pilfered) response brief in *United States ex rel. Valerie Rose v. Saint Elizabeth Medical Center, Inc., et al.*, No. 2:23-cv-123-DLB-CJS (E.D. Ky.). *See* [R. 28] therein. In that case Judge Bunning similarly found that the plaintiff's claims under KRS § 205.8463 were abandoned based on language identical to that referenced above. *United States ex rel. Valerie Rose v. Saint Elizabeth Medical Center, Inc., et al.*, No. 2:23-cv-123-DLB-CJS (E.D. Ky., Memorandum Opinion and Order, March 17, 2025).

2. Plaintiff's complaint **[R. 1]** is **DISMISSED with prejudice** as to her claims and without prejudice as to the claims of the United States;

3. An accompanying judgment will be issued forthwith.

This the 16th day of June, 2025.

Gregory F. Van Tatenhove
United States District Judge